IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| TODD BRANSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:12-CV-01444-DGK |
| | ) | |
| PULASKI BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING APPROVAL OF PARTIAL FLSA SETTLEMENT

This case is an "opt-in" collective action arising out of Plaintiffs' employment as loan officers with Defendant Pulaski Bank ("Pulaski"). Plaintiffs allege that Pulaski violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, by willfully failing to pay them the minimum wage and overtime compensation due. Pulaski denies the allegations.

Now before the Court is "Settling Opt-In Plaintiffs' Unopposed Motion for Approval of Partial FLSA Collective Action Settlement" (Doc. 60). As part of a settlement reached in an unrelated state court lawsuit, Plaintiffs Eric Eisenmenger, Derek Mannell, Cherrie Miller, Barry Priest, Christopher Resch, Curtis Schartz, Nathan Steele, Nikki Tygard, Kelly Whitwood, Charles Ziegler, and Jennifer Zillner (collectively, the "Settling Plaintiffs") move to dismiss their FLSA claims in this case. The Settling Plaintiffs are submitting the FLSA portion of the settlement to this Court for approval since it has jurisdiction over their FLSA claims.

After carefully reviewing the settlement and the applicable law, the Court declines to approve it because: (1) the existing record does not demonstrate that a bona fide wage and hour dispute exists; but more importantly (2) the Settlement is not fair and equitable; and (3) the

Settlement does not provide for a mandatory award of attorneys' fees and costs. Accordingly, the motion is DENIED.

**Background**

On November 15, 2012, Pulaski filed an amended petition in the Circuit Court of St. Louis County, Missouri ("the State Court Action") against a competitor, First State Bank, and nineteen of Pulaski's former employees ("the Former Employees") (collectively First State Bank and the Former Employees are "the State Court Defendants"), who worked as loan officers for Pulaski.[1] The Settling Plaintiffs are eleven of the nineteen Former Employees. Pulaski alleged the State Court Defendants conspired to divert loans, customers, and loan opportunities from Pulaski to First State Bank. It alleged the Former Employees engaged in tortious interference with Pulaski's business relationships and contracts; breached their duty of loyalty and recovery under the faithless-servant doctrine; misappropriated trade secrets and violated the Uniform Trade Secrets Act; tampered with Pulaski's computers; and engaged in unfair competition and civil conspiracy. Pulaski sought hundreds of thousands of dollars in actual and punitive damages from the State Court Defendants, including the Settling Plaintiffs.

The Settling Plaintiffs retained counsel to defend them in the State Court Action,[2] and had the case continued to trial, they would have accrued "substantial" attorneys' fees. Memo. in Support at 6.

---

[1] Loan officers, also called loan originators, communicate with potential loan customers, originate mortgage loan products, and perform administrative tasks associated with loan processing. To avoid confusion, the Court uses the term "loan officers" throughout this order.

[2] Attorney Rick Guinn represented Settling Plaintiffs Cherrie Miller, Nikki Tygard, Kelly Whitwood, Charles Ziegler, and Jennifer Zillner. Attorney Chris Pickering represented Settling Plaintiffs Barry Priest, Christopher Resch, and Nathan Steele. Attorney Brian Madden represented Settling Plaintiffs Eric Eisenmenger and Curtis Schartz. Attorney Nicole Fisher represented Settling Plaintiff Derek Mannell.

On December 12, 2012, Todd Branson ("Branson") filed the pending FLSA collective action against Pulaski for unpaid wages (the "FLSA action"). Branson brought this case on behalf of himself and all other similarly-situated loan officers employed by Pulaski during the relevant period. The Settling Plaintiffs joined this lawsuit by filing consents to join. Attorney George Hanson ("FLSA counsel") represents all of the Plaintiffs, including the Settling Plaintiffs, in this case.

On May 20, 2013, Pulaski and the State Court Defendants attempted to mediate their dispute. Although they did not reach an agreement, they continued to negotiate and finally reached a settlement ("the Settlement") in late August 2013.

As part of the Settlement, Pulaski agreed to release all its claims against the State Court Defendants, including the eleven Settling Plaintiffs. In return, First State Bank, on behalf of itself and the Former Employees, agreed to pay the mediator's fee and, more significantly, pay Pulaski $475,000. The Former Employees also agreed to release all claims they might have against Pulaski, including any FLSA claims, and specifically agreed to waive their FLSA claims brought in this case.

The Settlement did not provide for an award of attorneys' fees for work prosecuting the Settling Plaintiffs' FLSA claims. FLSA counsel has also stated he "is not seeking attorneys' fees or expenses as part of the proposed settlement." Doc. 61-5, Declaration at ¶ 6.

Judging from the existing record, the parties negotiated the Settlement in the State Court Action before engaging in any discovery related to the Settling Plaintiffs' FLSA claims. The Settling Plaintiffs indicate the Settlement is the product of contested litigation, but the contested litigation they are referring to is the State Court Action, not this case. The parties to the State Court Action negotiated the Settlement while merits discovery in this case was in its infancy.

Three of the four attorneys representing the Settling Plaintiffs' in the State Court Action have submitted declarations to the Court stating that at some point they received guidance from FLSA counsel concerning the value of their clients' FLSA claims.[3] These statements, however, are conclusory and do not provide any details about when this guidance was given or what the estimated range of values was. FLSA counsel has also submitted a declaration stating that he shared with these attorneys his best estimate of the potential range of values for their claims. His declaration is also conclusory and does not indicate when he shared this information or what he estimated the range of values for their claims to be. All of the above attorneys' declarations include perfunctory assertions that the Settlement is fair and reasonable, but they do not explain how or why it is fair and reasonable.

On September 23, 2013, Pulaski and the Settling Plaintiffs submitted a joint stipulation of dismissal in this lawsuit seeking to dismiss the Settling Plaintiffs' FLSA claims with prejudice, but they did not seek Court approval for the Settlement. The Court denied this joint stipulation on October 4, 2013, noting that the Settling Plaintiffs could not dismiss their claims with prejudice unless the Court first reviewed and approved the Settlement.

On October 17, 2013, the Court conditionally certified this case as a collective action and conditionally certified a class defined as "[a]ll current and former loan officers of Pulaski Bank who were employed during the last three years."

---

[3] The memorandum accompanying the motion asserts that,

> In late April 2013, the attorneys representing the Settling Plaintiffs in the state court action informed FLSA counsel that the parties to the state court action were going to mediate that action. Anticipating that Pulaski Bank might address the FLSA claims during the mediation, they requested guidance in evaluating the settling opt-in Plaintiffs' respective FLSA claims, which FLSA counsel provided. (*See* Ex. 2-5).

Doc. 61 at ¶ 9. The record, however, does not support the assertion that any communication occurred in April 2013. The affidavits submitted by the parties regarding these communications are conclusory, vague, and silent as to when these consultations occurred. There is also no affidavit from the fourth attorney, Chris Pickering, indicating he consulted FLSA counsel.

4
Case 4:12-cv-01444-DGK   Document 82   Filed 01/12/15   Page 4 of 13

On April 9, 2014, the Settling Plaintiffs filed the pending motion for Settlement approval.

## Jurisdiction

The Court has jurisdiction over the Settling Plaintiffs' FLSA claims because each Settling Plaintiff joined this lawsuit by submitting forms consenting to become a party plaintiff. *See* 29 U.S.C. § 216. The state court does not have jurisdiction over any of the Former Employees' FLSA claims because they did not file suit against Pulaski in that case, and the FLSA requires any compromise of FLSA rights be reached in a lawsuit where *the employee initiates the lawsuit* against the employer to vindicate the employee's FLSA rights. *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008) (noting that FLSA rights can only be compromised in a court action where the employee initiates the lawsuit against the employer).

## Standard

An employee may compromise or waive an FLSA claim "if [the] employee brings suit directly against a private employer pursuant to § 216(b) of the statute, and the district court enters a stipulated judgment" on the settlement after scrutinizing the settlement for fairness. *Copeland*, 521 F.3d at 1014; *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). To approve an FLSA settlement under 29 U.S.C. § 216(b), the court must find that: "(1) the litigation involves a bona fide dispute; (2) the proposed settlement is fair and equitable to all parties concerned; and (3) the proposed settlement contains an award of reasonable attorneys' fees." *Grove v. ZW Tech, Inc.*, No. 11-2445-KHV, 2012 WL 4867226, at *3 (D. Kan. Oct. 15, 2012).

## Discussion

At the outset, the Court commends the parties for attempting to amicably resolve this dispute. The Court is mindful that public policy favors settlements, *Lynn's Food Stores*, 679

F.2d at 1354, and that in reviewing a proposed settlement, a court must not substitute "its own judgment as to optimal settlement terms for the judgments of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (rejecting the objectors' appeal of a district court's order approving a proposed settlement in the context of a class action case). That said, the Court cannot approve the Settlement because: the record does not indicate whether there is a bona fide dispute; the Settlement is not fair and equitable; and the Settlement does not provide the requisite award of attorneys' fees.

**A.     The existing record does not demonstrate a bona fide wage and hour dispute exists.**

In order for a court to ascertain whether a bona fide dispute exists, the parties should provide the reviewing court with the following information:

> (1) a description of the nature of the dispute (for example, a disagreement over coverage, exemption or computation of hours worked or rate of pay); (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.

*Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 162403, at *3 (D. Kan. Jan 19, 2012). Here the parties have simply not provided the Court with this information, thus the Court cannot approve the Settlement.

This is an oversight that is easily cured, and if this were the only problem with the Settlement, then the Court would simply request additional briefing or deny the motion without prejudice. As discussed below, however, the Settlement contains other, fatal flaws.

6

**B.     The Settlement is not fair and equitable.**

In determining whether an FLSA settlement is fair and equitable to all parties concerned, a court considers many of the same factors used in evaluating a Rule 23 class action settlement, including how the settlement was negotiated; the amount of discovery that has occurred; class counsel's, the parties', and the class members' opinions about the settlement; and whether the present value of the settlement outweighs the potential recovery after continued litigation. *See Gambrell*, No. 10-2131-KHV, 2012 WL 162403, at *2-3; *Sanderson v. Unilever Supply Chain, Inc.*, No. 4:10-CV-0775-FJG, 2011 WL 5822413, at *3 (W.D. Mo. Nov. 16, 2011).

Although the Court recognizes that Pulaski, FLSA counsel, and the Settling Plaintiffs all endorse the Settlement and this weighs in favor of approval, the Court cannot approve it because it is not fair and equitable. To begin, the existing record does not contain information demonstrating that the Settlement provides fair value for the Settling Plaintiffs' FLSA claims. More importantly, the Settlement is demonstratively not fair and equitable as evidenced by the lack of discovery that occurred before the parties reached the Settlement; the circumstances under which it was negotiated; and the fact that it does not consider the relative strengths of the Settling Plaintiffs' claims.

**1.     The Court cannot determine from the existing record whether the Settlement provides fair value for the Settling Plaintiffs' FLSA claims.**

At the outset, the Court notes the existing record does not contain any information from which the Court can determine whether the Settlement is a fair and reasonable compromise which offers fair value for the Settling Plaintiffs' claims. In order to make this determination, the Court needs to know: (1) the approximate value of the Settling Plaintiffs' FLSA claims, and (2) the Settlement's value to the Settling Plaintiffs, that is, the approximate value to the Settling

Plaintiffs from Pulaski's dismissal of its claims against them in the state court litigation. However, the existing record does not provide this information.

The former is readily ascertainable. Collective action lawsuits brought on behalf of loan officers are not uncommon. *See, e.g., In re Wells Fargo Wage & Hour Emp't Practices Litig.*, 18 F. Supp. 3d 844, 847 (S.D. Tex. 2014) (MDL consolidating five cases brought on behalf of loan originators and others with similar positions); *Casas v. Conseco Fin. Corp.*, No. 00-1512 (JRT/SRN), 2002 WL 507059, at *1 (D. Minn. Mar. 31, 2002) (prosecuting FLSA claims on behalf of 2,900 current and former loan originators). The amount a loan officer receives in an FLSA settlement typically ranges from a few thousand dollars to tens of thousands of dollars, depending upon the strength of the class members' claims generally, the number of weeks the employee worked during the class period, and the employee's compensation level. *See, e.g., Peterson v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 3793963, at *13 (D. Kan. Aug. 25, 2011) (observing that in the settlement half of the loan officers received around $4,000, but one received $24,000); Plaintiff's Unopposed Motion in Support of Motion for Approval of FLSA Collective Action Settlement, *Hernadez*, No. 4:07-cv-0726-ODS (W.D. Mo. July 13, 2009), ECF No. 106 (noting that for the loan officer plaintiffs who were employed during substantially all of the class period, individual settlement amounts ranged from $10,000-$20,000 or more, and that the average per capita settlement net of fees and costs was $7,677.92). Indeed, FLSA counsel has represented loan officers in many collective action cases both in this District and in the neighboring District of Kansas. *See, e.g., Hernadez v. Tex. Capital Bank, N.A.*, No. 4:07-cv-0726-ODS (W.D. Mo. filed Sept. 27, 2007); *Gieseke v. First Horizon Home Loan Corp.*, No. 04-2511-CM-GLR (D. Kan. filed Oct. 14, 2004). Thus, FLSA counsel should be able to provide the Court with estimated range of values for the Settling Plaintiffs' FLSA claims.

As for the Settlement's value to the Settling Plaintiffs, although objective measures may not be readily available, counsel could calculate a good-faith estimate by adding the projected cost of defense to the likely liability, if any, the Settling Plaintiffs faced. Without the above information, the Court cannot make a reasoned determination whether the Settlement provides fair value for the Settling Plaintiffs' claims.

While this problem can be fixed by providing the Court with additional information, something the Court expects the parties will do in submitting any subsequently proposed settlement, the following defects cannot be cured.

> **2. The parties reached the Settlement before conducting discovery on the merits of the Settling Plaintiffs' FLSA claims.**

To begin, nothing in the record suggests the parties engaged in any meaningful discovery on the merits of the Settling Plaintiffs' FLSA claims before they reached the Settlement. FLSA counsel has not suggested that any discovery occurred, and after independently reviewing the record, the Court cannot find any evidence any discovery occurred. This indicates that the Settling Plaintiffs are not waiving their FLSA claims with knowledge of their relative merits, a fact which weighs against approval.

> **3. The record does not establish that the settlement is a reasonable compromise; rather, it suggests it is a waiver of statutory rights forced on the Settling Plaintiffs by virtue of Pulaski's stronger bargaining position in the state court litigation.**

Congress enacted the FLSA to protect workers from substandard wages and oppressive working hours. *Lynn's Food Stores*, 679 F.2d at 1353. "Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus the provisions are not subject to negotiation or bargaining between

9

employers and employees." *Id*. at 1352 (invalidating an employer's attempt to privately settle a group of employees' FLSA claims). As the Eleventh Circuit observed,

> Settlements may be permissible *in the context of a suit brought by employees* under the FLSA . . . because *initiation of the action by the employees* provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the [court] to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354 (emphasis added).

The Settlement here was not negotiated "in the context of a suit brought by employees under the FLSA." *Id.* Rather, it was negotiated in the context of an unrelated lawsuit where, judging from the fact that First State Bank paid Pulaski $475,000 on behalf of itself and the Former Employees to settle the litigation, it appears Pulaski possessed significantly greater bargaining power. Pulaski was clearly in a strong enough position vis-à-vis the Former Employees to dictate the Settlement's terms: if the Former Employees went to trial they risked a substantial judgment, and even if they prevailed, they would still incur substantial attorneys' fees defending themselves. Thus, when Pulaski insisted the Former Employees waive any FLSA claims as part of any settlement, they had little choice but to accept.

Of course, the Settling Plaintiffs' decision to waive their claims may have been a rational one—the potential liability (including punitive damages) they may have faced in the state court litigation may have exceeded the potential value of their FLSA claims. But whether or not their

decision was rational does not change the fact that it appears to have been the product of a great inequality in the parties' respective bargaining power, an inequality that appears to have no relationship to the merits of their FLSA claims. And settlements which are the product of an employer's greater bargaining power is what Congress intended to avoid by making the FLSA's provisions mandatory. *Id.* at 1352. This weighs against approving the Settlement.

### 4. The Settlement is not fair and equitable because it does not consider the relative strengths of the individual Settling Plaintiffs' claims.

Collective action settlements usually operate as follows: After the parties have engaged in discovery and determined a range of values for the class members' unpaid straight time wages, unpaid overtime, and statutory penalties, the parties negotiate a gross settlement amount which is a compromise of their relative positions. *See, e.g., Peterson v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 3793963, at *7-8 (D. Kan. Aug. 25, 2011). After deducting settlement expenses, the settlement is distributed on a pro rata basis based upon each class member's rate of pay and length of time employed by the defendant during the applicable class period. *Id.* Thus, a plaintiff who worked more hours or who worked at a higher rate of pay during the class period will receive more from the settlement. This approach is fair because it awards compensation to each employee in proportion to the amount of compensation and statutory penalties he or she is due. Each class member's pay-out is derived from the same set of criteria (i.e., the same percentage of their hours worked and rate of pay), and no class member, or group of class members, receives more favorable treatment than any other.[4]

The Settlement, however, treats each Settling Plaintiff the same, *regardless of the value of his or her FLSA claim*. Under the Settlement, the benefit to a Settling Plaintiff is that Pulaski

---

[4] The exception, of course, are the named plaintiffs who may receive an incentive payment to compensate them for the time and effort they have invested in the case by initiating the lawsuit, sitting for a deposition, attending hearings, etc. Compensating them for these efforts is appropriate.

11

dismisses its claims against him or her in the State Court Action. In return, each Settling Plaintiff must waive his or her FLSA claim against Pulaski, regardless of its value. A Settling Plaintiff who releases an FLSA claim worth $20,000 receives the same benefit as one whose claim is worth $500. Hence, the Settlement treats a Settling Plaintiff with a valuable claim (that is, a loan officer who worked for Pulaski during the entire class period at a high rate of pay) the same as it treats one with a marginal claim (someone who worked only a few weeks during the class period, or someone who worked at a low rate of pay). In this way, the Settlement is not fair and equitable to the Settling Plaintiffs' vis-à-vis each other.

Indeed, the fact that the Settlement does not consider the individual merits of the Settling Plaintiffs' claims in any way, reinforces the Court's concern that the Settlement is not a reasonable compromise but a waiver of statutory rights forced on the Settling Plaintiffs by virtue of Pulaski's stronger bargaining position in the state court litigation.

**C.      The Court cannot approve the Settlement because it does not provide for an award of attorneys' fees.**

Finally, the Court cannot approve the Settlement because it does not provide for a reasonable award of attorneys' fees and costs. The FLSA entitles a prevailing plaintiff to an award of fees and costs, and although the court has discretion in determining what a reasonable fee is, a fee award is mandatory. *Gambrell*, 2012 WL 162403, at *2. The plaintiffs are considered a prevailing party if they "succeed on any significant issue in litigation which achieves some of the benefit they sought in bringing suit." *Id.* Here, the Settlement provides the Settling Plaintiffs with some benefit,[5] thus they are a prevailing party and the Settlement must include some provision awarding attorneys' fees and costs.

---

[5] Although the exact value of this benefit is unclear from the existing record, there is some benefit to the Settling Plaintiffs.

12

Additionally, the Settlement's failure to provide an award of attorneys' fees and costs reinforces the Court's concern that the Settlement is not "a reasonable compromise of disputed issues," but a product of Pulaski's overreaching in the state court litigation.

In any event, the Court cannot approve the Settlement because it contains no provision for attorneys' fees and costs.

## Conclusion

For the reasons discussed above, the "Settling Opt-In Plaintiffs' Unopposed Motion for Approval of Partial FLSA Collective Action Settlement" (Doc. 60) is DENIED.

**IT IS SO ORDERED.**

Date: January 12, 2015 /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT