IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TODD BRANSON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:12-CV-01444-DGK |
| ) | |
| PULASKI BANK, ) | |
| ) | |
| Defendant. ) | |

## ORDER APPROVING FLSA SETTLEMENT

This case is an "opt-in" collective action arising out of Plaintiffs' employment as loan officers with Defendant Pulaski Bank ("Pulaski"). Plaintiffs allege that Pulaski violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, by willfully failing to pay them the minimum wage and overtime compensation due. Pulaski denies the allegations.

Now before the Court is "Plaintiffs' Unopposed Motion for Approval of FLSA Collective Action Settlement" (Doc. 96). For the following reasons, the motion is GRANTED.

### Background

On December 12, 2012, Plaintiff Todd Branson, on behalf of himself and all others similarly-situated, filed this FLSA collective action against Pulaski for unpaid overtime wages. Pulaski denied the material factual allegations in the case and asserted multiple affirmative defenses.

On October 17, 2013, the Court granted conditional certification of a putative class defined as all current and former Pulaski loan officers who were employed during the previous

three years. Thirty-four employees timely filed consent-to-join forms; twenty-eight are still actively participating in the litigation and are covered by the proposed settlement.[1]

Pulaski sued a subset of eleven former Pulaski loan officers in unrelated litigation. On April 9, 2014, those loan officers, who are also Plaintiffs here, submitted a proposed settlement of their claims only for Court approval. This settlement was negotiated in conjunction with the settlement of the claims in the unrelated litigation. The Court declined to approve this settlement because: (1) the then-existing record did not demonstrate that a bona fide wage and hour dispute existed; but more importantly (2) the proposed settlement was not fair and equitable; and (3) the proposed settlement did not provide for a mandatory award of attorneys' fees and costs. *Branson v. Pulaski Bank*, No. 4:12-cv-01444-DGK, 2015 WL 139759, at *1 (W.D. Mo. Jan. 12, 2015).

The parties subsequently negotiated a new proposed settlement ("the Settlement") which covers all Plaintiffs still actively engaged in this litigation. The Settlement's essential terms are as follows. Pulaski will pay $134,611.95 into a gross settlement fund. Settlement Agreement (Doc. 96-1) at 1.10. Plaintiffs' counsel will request twenty-five percent of the gross amount of the fund ($33,652.99) as attorneys' fees, plus an additional $6,176.01 for reimbursement of costs and expenses. *Id.* at 3.1. Pulaski agrees not to oppose Plaintiffs' counsel's application for these fees and expenses. *Id.* Named Plaintiff Todd Branson will receive a modest $2,000 service award for his work prosecuting this case on behalf of the class. *Id.* at 3.3. The remaining $92,782.95 will be distributed to the twenty-eight Plaintiffs on a pro rata basis by multiplying each employee's number of weeks employed during the applicable period by the per-week value of the employee's work. *Id.* at 1.7, 4.1. The amounts received by each individual Plaintiff will vary, but the per capita average recovery will be $3,314.

---

[1] Five opt-in Plaintiffs were dismissed on November 4, 2014, for failing to respond to discovery requests. The estate of the sixth Plaintiff has repeatedly failed to respond to Plaintiffs' counsel's attempts at contact and so is not covered by the Settlement.

The remaining provisions are also fairly standard. For tax purposes, fifty percent of each employee's settlement will constitute lost wages and fifty percent will constitute non-wage damages. *Id.* at 4.3. There is no potential reversion of any settlement funds to Pulaski. Any settlement checks that are not cashed within 180 days of issuance will revert to that employee's respective state unclaimed property fund. *Id.* at 4.2. The Settlement also includes a confidentiality agreement. *Id.* at 14.1.

## Standard

An employee may compromise or waive an FLSA claim "if [the] employee brings suit directly against a private employer pursuant to § 216(b) of the statute, and the district court enters a stipulated judgment" on the settlement after scrutinizing the settlement for fairness. *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008) (noting that FLSA rights can only be compromised in a court action where the employee initiates the lawsuit against the employer); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). To approve an FLSA settlement under 29 U.S.C. § 216(b), the court must find that: "(1) the litigation involves a bona fide dispute; (2) the proposed settlement is fair and equitable to all parties concerned; and (3) the proposed settlement contains an award of reasonable attorneys' fees." *Grove v. ZW Tech, Inc.*, No. 11-2445-KHV, 2012 WL 4867226, at *3 (D. Kan. Oct. 15, 2012).

Finally, public policy favors settlements. *Lynn's Food Stores*, 679 F.2d at 1354. In reviewing a proposed settlement, a court must not substitute "its own judgment as to optimal settlement terms for the judgments of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (rejecting the objectors' appeal of a district court's order approving a proposed settlement in the context of a class action case).

## Discussion

The Court finds the Settlement and the parties' supporting briefs (Docs. 97 & 98) fulfill the prerequisites for approval.

**A.     The parties have shown a bona fide wage and hour dispute exists.**

To demonstrate a bona fide wage and hour dispute exists, the parties must provide the reviewing court with the following information:

> (1) a description of the nature of the dispute (for example, a disagreement over coverage, exemption or computation of hours worked or rate of pay); (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.

*Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 162403, at *3 (D. Kan. Jan 19, 2012).

The parties have demonstrated a bona fide dispute exists concerning whether Plaintiffs were misclassified workers. Plaintiffs contend Pulaski misclassified them as exempt from overtime requirements and failed to maintain required time records. Pulaski maintains Plaintiffs were exempt because they were "outside sales" employees who customarily and regularly made sales away from the place of business. Both parties cite relevant facts and plausible caselaw supporting their respective positions. There is little dispute about the number of hours actually worked.

**B.     The Settlement is fair and equitable to all parties.**

To evaluate the fairness and equitableness of an FLSA settlement, the Court considers the following factors:

> (1) at what stage of the litigation the settlement was reached, and the complexity, expense, and likely duration of the remaining litigation; (2) how the settlement was negotiated, *i.e.*, whether there are any indicia of collusion; (3) class counsel, the parties, and the class members' opinions about the settlement; and (4) whether the present value of the settlement outweighs the potential recovery after continued litigation.

*McGee v. Concentra Health Servs., Inc.*, No. 12-CV-1277-W-DGK, 2015 WL 58532, at *3 (W.D. Mo. Jan. 5, 2015) (internal quotation marks omitted).

Collectively, these factors favor approving the Settlement. First, the parties reached the Settlement at an intermediate stage of the litigation, after they engaged in substantial written discovery and the case was conditionally certified as a collective action. Although substantial litigation remained—dispositive motions, a trial, and potentially an appeal—which would have been complex, expensive, and time-consuming, there does not appear to have been an unusual rush to settlement. Second, the parties reached the Settlement after on-again, off-again negotiations spanning a two-year period which included at least two mediations with different, experienced mediators. Third, class counsel, the parties, and all Plaintiffs who have expressed an opinion on the Settlement have endorsed it. No Plaintiff has objected or expressed concern about its terms, fairness, or the amount of attorneys' fees. Fourth, although it is unclear from the existing record exactly what the Plaintiffs' potential recovery could have been had they continued litigating,[2] the Settlement appears to be within the range of reasonable given the legal obstacles to recovery Plaintiffs face. While Plaintiff's counsel acknowledges that the per capita value of the Settlement is on the lower end of settlements in loan officer cases, the record

---

[2] Counsel's failure to provide any estimate of a potential recovery after continued litigation is concerning, but not fatal, to approval here.

contains a plausible explanation for this result: Both parties counsel believe Pulaski has a strong defense that its loan officers were, in fact, outside sales employees. *See* Pl.'s Br. (Doc. 97) at 16; Def.'s Br. (Doc. 98) at 1-3.

**C.     The Settlement provides for an award of reasonable attorneys' fees.**

Finally, the Settlement provides for a reasonable award of attorneys' fees. The FLSA entitles a prevailing plaintiff to an award of fees and costs, and although the court has discretion in determining what a reasonable fee is, a fee award is mandatory. *Gambrell*, 2012 WL 162403, at \*2. Because the Settlement provides the Plaintiffs with some benefit, they are the prevailing party and so their attorneys are entitled to a reasonable attorneys' fee.

The Settlement sets this amount at twenty-five percent. Any concern the Court has about this percentage is ameliorated by the fact that given the modest amount in the settlement fund, twenty-five percent yields a fee commensurate with the modest recovery obtained on the clients' behalf. Also, given the probable number of hours Plaintiffs' counsel have invested in this case,[3] the Settlement will not result in a windfall for Plaintiff's counsel. While the Court could award counsel less than the maximum amount provided for in the Settlement, *see McClean v. Health Systems, Inc.*, No. 11-03037-CV-S-DGK, ECF doc. no. 270 (W.D. Mo. Aug. 4, 2015), the Court sees no reason to do so here.

Because the relevant factors support approval, the Court GRANTS Plaintiffs' motion (Doc. 96) and approves the Settlement.

**IT IS SO ORDERED.**

Date: <u>September 15, 2015</u>                    /s/ Greg Kays
                                                                    GREG KAYS, CHIEF JUDGE
                                                                    UNITED STATES DISTRICT COURT

---

[3] Plaintiffs' counsel claims that his firm has spent "hundreds of hours" prosecuting this case. Given the absence of any time sheets or billing records, the Court takes this assertion with a grain of salt.